UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| _____ )<br>UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>ALEXANDER GERMAN )<br>)<br>_____ ) | No. 24-CR-99-LM |

## **DEFENDANT'S SENTENCING MEMORANDUM**

NOW COMES the defendant, Alexander German, by and through counsel Kirsten Wilson, of Kirsten Wilson Law, PLLC, and respectfully submits the following memorandum for the Court's consideration with regard to the sentencing of Alexander currently scheduled for September 22, 2025.

### **INTRODUCTION**

On October 9, 2024, Alexander was charged by indictment, with Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1), 21 U.S.C. §§ 841(b)(1)(C), and 21 U.S.C. §§ 846. PSR ¶1. On October 23, 2024, Alexander was arrested for the instant offense and had his initial appearance in Court. PSR ¶2. Alexander had a detention hearing on October 28, 2024 and stipulated to detention. PSR ¶3.

On June 10, 2025, Alexander formally accepted responsibility and plead guilty to Count 1 of the Indictment, which was Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. Document #95.

**PLEA AGREEMENT**

The United States and the defendant stipulated and agreed to the United States recommending Alexander be sentenced within the advisory guidelines. Document #95. Parties agreed to limit the calculations to transactions on four occasions; those being July 6, 2023, August 31, 2023, October 17, 2023 and October 20, 2023. The Defense is asking for a sentence of 38 months of incarceration with pretrial credit applied, based on his early acceptance of responsibility, lack of a criminal record, productive use of time while incarcerated, and prospects for successful rehabilitation.

**PROMPT ACCEPTANCE OF RESPONSIBILITY**

Alexander accepted responsibility early on in the process, after reviewing discovery and consulting with counsel. He took part in negotiations which led to the plea agreement. Alexander changed his plea and accepted the terms in May, 2025. PSR¶37 and document #95. It is believed that Alexander was one of the first to accept responsibility based on the case summary sheet.

**I.     HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

**A.  THE DEFENDANT'S UPBRINGING AND LIFE CIRCUMSTANCES**

Alexander German is 28 years old. He was born in Bani, Dominican Republic and lived with his mom, Carmen, who supported the family. She worked hard for many years in factory jobs that were physically taxing and had to stop due to losing her vision because of cataracts and severe knee problems prevented her from standing or walking well.

His father, Ney Alexander German, had left the Dominican Republic when Alexander was 12 years old. Once his father moved, the family struggled financially. Alexander's father

currently is working at a plastic factory. Alexander is close to his mother and reconnected with his father four years ago. PSR ¶62.

Alexander has five half siblings ranging in age from 17 through 35. His maternal half-sister, Altagracia Arias German, his maternal half-brother, Angel Arias German, his maternal half-brother, Elvin Arias German, and his maternal half-sister, Jenny Arias German. They are close and he has been in contact with his siblings while he has been in detention. He also has a 17-year-old paternal half-sister, Yamilet Guzman-Pena, PSR ¶62. His family is very supportive of him. See letters of support Exhibits A through C.

His family in the Dominican Republic moved in with his paternal grandmother and she helped raise them. His mother worked long hours to support them, but Alexander remembers seeing or hearing his mom cry every night after his dad left. Alexander remembers when his sister became pregnant his mother was crying and upset because it was more responsibility and another person for her to support. He stated that he just remembers there was so much crying in his home growing up; however, despite coming from a home that was not financially well off, Alexander came from a loving home. PSR ¶63.

Alexander has no children and has been in a long-standing relationship with Natividad Martinez. Ms. Martinez lives in Boston, Massachusetts and is employed as a medical caretaker. She is 28 years old and has no mental health issues, substance abuse issues or a criminal record. She is very supportive and she speaks daily with Alexander. See Exhibit D.

Alexander spent the majority of his life in Bani, Dominican Republic until moving to Lawrence, Massachusetts in 2018. He has lived with his girlfriend for 3 years. PSR ¶65. Alexander does not speak fluent English, and his primary language is Spanish. He graduated

from Liceo Matutino Francsisco Gregorio Billini High School in 2013. Alexander attended Instituto Superior de Formacion Docente Salome Urena in Santo Domingo, Dominican Republican on a partial scholarship for 3 semesters in 2015/2016 and had to leave because he and his mother couldn't afford continuing courses.

It is one of Alexander's dreams to complete his education and earn a degree. He had planned on being a physical education teacher, PSR ¶73, but a passion of his was Egypt and Egyptian mythology. His history teacher in high school captured Alexander's attention by explaining that Egyption culture was the most advanced for 14000 years, and described the pyramids and tombs of the pharaohs; how they were built of massive stone that had to be cut and transported. This fascinated Alexander and led to a further interest in hieroglyphics. Many of the symbols of Alexander's love of Egypt were memorialized in his tattoos. Alexander lights up when discussing King Ramses or Tutankhamen.

However as noted, this passion for studying Egyptian culture in a formalized setting was cut short when Alexander and his mother could no longer afford to send him to college. He then went on to take a barber course in 2016-2017 in the Dominican Republic, and worked as a barber for a period of time both in the Dominican Republic and in the United States. PSR ¶74, 77 and 78.

Alexander has also been employed in construction trades as well as delivery work. PSR ¶75 and 76.  He has consistently sent money to the Dominican Republic to his mother; noting her inability to work and his deep love and appreciation for all she has done for him. Below are photos of him working in construction jobs since the Massachusetts arrest that resulted in him ceasing any involvement in the conspiracy.

4



B. **SUBSTANCE USE**

Despite coming from an impoverished background with a missing dad, Alexander largely avoided some of the predictable substance use issues that many fall prey too. He didn't began drinking alcohol until age 18. Alexander never has been a big drinker, and notes that alcohol is limited to special events or occasions. He has not had issues with overconsumption, nor does he recall the last time he consumed alcohol. PSR ¶71. Alexander did smoke marijuana, although he didn't begin smoking marijuana until age 25. He smoked about two times per week up until his arrest. He has not used any other controlled substances. PSR ¶72.

C. **CRIMINAL RECORD OR LACK THEREOF**

Alexander has not been incarcerated prior to his arrest in this matter. In fact, he has little record at all. What is of note is that from the sparse records in Massachusetts, Alexander showed up to court on summons and frequently admitted to his personal conduct upon

5

arrest when speaking to the police. PSR¶ 57-59. For example, he has admitted that he wasn't an alias to police, and admitted possession of marijuana. Id. During his time at the Merrimack County House of Corrections on this charge, Alexander has completed a number of courses. These courses include 21 educational courses. See Exhibit E. Alexander has also taken advantage of online coursework, as well as work opportunities while incarcerated, including working in the kitchen.

While Alexander has had one disciplinary action while at MCHOC, the circumstances of the event are important to note. Alexander allowed someone else to use the phone before him while it was "his" turn. Alexander was waiting to call his mother to check on her health, but allowed the other inmate to go before him as he was told it would be very brief. However, the other inmate kept speaking on the phone, and the inmates were told they had to lock down in five minutes. Alexander asked the other inmate to hang up, and was ignored, so Alexander hung up the phone. The other inmate hit him. When corrections officers became involved, Alexander was compliant. The following day, Alexander apologized to the other inmate, and he now indicates they are friends.

## II.    GUIDELINE ANALYSIS

### Total Offense Level (TOL) Computation.

Alexander's offense conduct in this case Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. Alexander's initial offense level is 32. PSR ¶39.

The Presentence Report adds an enhancement for a dangerous weapon. Alexander was in a picture with an AR15 near him, held by other individuals. In fact, Alexander is

looking down in the still photo, and not engaging with the gun or the person taking the photo (it is clear that neither Alexander nor the other backseat occupant is holding the gun.)

The probation report added two levels pursuant to USSG §2D1.1(b)(1) resulting in an offense level of 34 due to the weapon. PSR ¶40. Alexander simply got into the back seat of a car, and one of the occupants of the front seat took a video while they were holding a gun. German didn't know the gun was in the car, didn't touch the gun, and in the still photo pulled from the video wasn't even looking at the gun. He was in the background of a photo that someone took of a gun and nothing more – or in the proximity of a gun that he didn't bring, hold, or acknowledge.

This enhancement is especially troubling, as without the enhancement, Alexander would be eligible for the zero point offender reduction (-2, 4C1.1) and safety valve ( -2, 2D1.1(b)). If those reductions were applied – an additional four points would come off of the offense level, bringing it to 27 (Guideline Sentencing Range 70-87.)

Alexander took responsibility for his offense, as he has done with the other minor offenses he has been arrested on in Massachusetts, resulting in a 2-level reduction pursuant to USSG §3E.1.1(a). PSR ¶46. He did so in a timely if not expedient fashion, resulting in an additional 1-level reduction recommendation pursuant to USS §3E.1.1(b). PSR ¶47.

### Criminal History Category (CHC)

The presentence report notes a criminal history score of 1, category I. PSR¶55. It is important to note that the matter resulting in the 1 point was continued without a finding. PSR¶52. The violation of probation was entered solely upon his arrest on the present charge, and subsequent incarceration, causing him to miss court in Massachusetts. It is also

important to note, that when Alexander was arrested on 1/23/2024, both he and the others he knew in the named conspiracy renounced his involvement due to his pending charges. Therefore, it is asserted that no further criminal acts were undertaken by Alexander in the named conspiracy and no violation of probation under the sentence.

### **Supreme Court's Guidance - Guidelines are Not Presumed Reasonable**

In determining an appropriate sentence, the Court should first calculate the appropriate guideline range under the United States Sentencing Guidelines ("the Guidelines,") including any appropriate departures. *United States v. Smith*, 531 F.3d 109, 111 (1st Cir. 2008.)

After calculating the Guideline range, the Court should consider the factors set forth in 18 U.S.C. § 3553(a) to determine an appropriate sentence, explain its reasoning, and select a sentence that is "sufficient, but not greater than necessary, to achieve the goals of sentencing." Id. (internal quotations omitted.)

In doing so, "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam) (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007)). "The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." Id. (emphasis in original). The sentencing factors in 18 U.S.C. § 3553(a)(2) include: the need for the sentence imposed —

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant;

and (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

Post-offense rehabilitation is an established basis for "a discretionary sentence reduction" under Section 3553(a), *United States v. Garcia-Ortiz*, 657 F.3d 25, 30 (1st Cir. 2011) (citing *Pepper v. United States*, 562 U.S. 476 (2011)). It is also a recognized basis for departure under Section § 5K2.0(a)(2). See *United States v. Bradstreet*, 207 F.3d 76 (1st Cir. 2000) (affirming downward departure for post-offense rehabilitation); *United States v. Whitaker*, 152 F.3d 1238 (10th Cir. 1998) (post-offense rehabilitation an appropriate basis for a downward departure if the defendant's "efforts are of a magnitude that the defendant's situation cannot be considered typical of those where an acceptance of responsibility adjustment is granted").

The Court is encouraged to sentence Alexander to a period of incarceration of 38 months, which is sufficient but not greater than necessary to achieve the goals of sentencing.

Dated: September 15, 2025

Respectfully submitted,
Alexander German, By his counsel,

/s/ Kirsten B. Wilson

Kirsten Wilson Law
600 State Street, Suite 4
Portsmouth, NH 03801
(603) 501-0301

**CERTIFICATE OF SERVICE**

I herby certify that on September 15, 2025 the above document was served electronically upon Assistant United States Attorney, Heather Cherniske, through the CM/ECF filing system.

                                                           */s/Kirsten Wilson*
                                                          Kirsten Wilson
                                                          Kirsten Wilson Law