UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No.: 24-cr-99-LM |
| ) | |
| ) | |
| ALEXANDER GERMAN ) | |

GOVERNMENT'S SENTENCING MEMORANDUM AND
REPLY TO DEFENDANT'S SENTENCING MEMORANDUM

The defendant worked with a drug trafficking organization ("DTO") and sold fentanyl on seven occasions to an undercover officer. On one occasion, he assisted in supplying a co-conspirator with two kilograms of fentanyl for further distribution. During the DTO's operation, the DTO obtained guns in exchange for drugs. In fact, the defendant and a co-conspirator were photographed with an AK-47 during the conspiracy. Because of the defendant's role in the DTO and his serious criminal conduct, the Court should sentence the defendant to 108 months' imprisonment.

**I.     The Guideline Calculation.**

Probation determined that the defendant's total offense level is 31 and that he is a criminal history category I, resulting in a guideline range of 108-135 months' imprisonment. Presentence Report ("PSR") ¶ 84. The defendant does not object to the applicable drug weight or the defendant's criminal history score.[1] However, the defendant objects to the application of the

---

[1] The defendant mentioned that the parties agreed to limit the drug weight calculation to the four instances outlined in the plea agreement's statement of facts. Def.'s Sent. Memo., pg. 2. That is incorrect. The plea agreement's statement of facts outlines facts supporting the offense charged but does not include all of the defendant's conduct. Despite the defendant's statement, he does

dangerous weapon enhancement, arguing that the defendant's presence near a firearm does not support its application. The defendant also argues that if the enhancement was not applied, the defendant would be eligible for the zero-point offender reduction and safety valve. Because the defendant and his co-conspirators possessed weapons during the conspiracy to distribute controlled substances, Probation properly applied the enhancement. Moreover, the defendant is not a zero-point offender, PSR ¶ 52, and he is not safety valve eligible, regardless of the enhancement's application, as he did not provide a "safety valve" proffer. U.S.S.G. §§ 2D1.1(b)(18), 5C1.2.

        A.        *§2D1.1(b)(1) – Possession of a Dangerous Weapon.*

The defendant's guideline calculation should include a two-point enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possessing a dangerous weapon associated with drug trafficking. The application notes for the dangerous weapon enhancement state that "the enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, Application Note 11. The guidelines thus require a "certain nexus" between the gun and the offense. *United States v. Thongsophaporn*, 503 F.3d 51, 58 (1st Cir. 2007). To do so, "the prosecution need only prove that the defendant possessed the weapon during the currency of the offense, not necessarily that he actually used it in perpetrating the crime or that he intended to do so." *United States v. McDonald*, 121 F.3d 7, 10 (1st Cir. 1997). "For this enhancement to attach, a defendant need not be caught red-handed: the enhancement applies not only where a defendant himself possessed a firearm but also where it was reasonably foreseeable to the defendant that firearms would be possessed by others during

---

not contest Probation's calculated drug weight, which includes all eight instances where the defendant sold drugs to an undercover officer during the conspiracy. *See Id.* at pg. 6.

2

the conspiracy." *United States v. Burgos-Figueroa*, 778 F.3d 319, 321 (1st Cir. 2015) (citing U.S.S.G. § 1B1.3(a)(1)(B); *United States v. Bianco*, 922 F.2d 910, 912 (1st Cir. 1991)).

The two-level enhancement applies under §2D1.1(b)(1) "[i]f a dangerous weapon (including a firearm) was possessed during the course of a drug-trafficking conspiracy." *Id.* "Once the government has made that showing, the burden shifts to the defendant to persuade the factfinder that a connection between the weapon and the crime is clearly improbable." *United States v. Anderson*, 452 F.3d 87, 90 (1st Cir. 2006) (cleaned up).

Here, the enhancement applies because the defendant and the DTO possessed guns during the drug conspiracy, and the defendant cannot meet his burden of establishing that their connection is "clearly improbable." On or about April 4, 2023, the DTO obtained an AK-47 from another co-conspirator, Trenton Murphy, in exchange for fentanyl. PSR ¶ 23. During a search of co-conspirator Yoefferman Soto's phone, investigators located a picture of the defendant and Soto with an AK-47, which appears consistent with the gun purchased from Murphy. The picture, depicting the defendant on the left-side, is dated May 26, 2023 and is depicted below:



3

The defendant is not disputing that the DTO traded drugs for guns but is arguing that the defendant's presence in the picture does not warrant the enhancement's application. First, the defendant is seated next to a large gun – an AK 47 – with a co-conspirator, during the timeframe for the conspiracy. The gun is consistent with one that the DTO obtained in exchange for drugs. He possessed it during the drug conspiracy.

Even if the Court does not find that he possessed the gun, the defendant's argument fails because the enhancement is applicable if it was "reasonably foreseeable" that a member of the drug conspiracy would possess a gun during the offense. *See Burgos-Figueroa*, 778 F.3d at 321. Here, the defendant had personal knowledge that guns were traded for drugs during the conspiracy. The defendant told investigators upon his arrest that the DTO engaged in such behavior. PSR ¶ 34a. The defendant also recalled a specific instance where one co-conspirator returned to a DTO "stash house" with a bag of firearms. *Id*. There is no question that the defendant knew that guns were being used during the DTO's drug trafficking. Therefore, not only was the defendant caught "red handed" with a gun during the drug conspiracy, but it was more than just "reasonably foreseeable" to him that his coconspirators possessed guns – he knew firsthand. *See Burgos-Figueroa*, 778 F.3d at 321. Thus, Probation properly applied the enhancement.

    **II.**     **The §3553(a) Factors Support the Government's Requested Sentence.**

The defendant's serious conduct warrants a guideline sentence of 108 months' imprisonment. The defendant played a crucial role to the DTO's success. He delivered the drug product to the customers. The defendant personally sold drugs on seven occasions to an undercover officer, totaling over a kilogram of fentanyl.

But the defendant was not a naïve participant to the drug scheme. He was involved beyond delivering drugs, admitting that on at least one occasion, he moved drugs, tools, and cutting agents from one residence to a "stash" vehicle. Additionally, he and Jose Herrera supplied a lower-level conspirator, Wayestar Concepcion, two kilograms of fentanyl to deliver to the undercover officer in New Hampshire. PSR ¶32-34. The DTO trusted the defendant, and he worked with them to profit from addiction.

Moreover, the defendant admittedly spent time with the DTO and knew how the DTO operated. PSR § 34a. He knew the "stash locations." He knew about the DTO's exchange of drugs for guns – a deadly combination. He knew about the DTO's drug preparation process. And he never intentionally left the DTO, but instead, was ostracized following a drug arrest.

He knew the DTO's dangerous, significant drug trafficking and purposely chose to participate. The defendant did not participate once or twice for quick cash, or to support an addiction. The defendant, together with the DTO, operated a high-volume drug operation for profit. The nature and circumstances warrant a significant term of incarceration.

The government's recommended sentence is the low end of the applicable sentencing guideline range, recognizing the defendant's minimal criminal record. Nevertheless, the defendant's continuous drug-dealing and his role in a large DTO warrants a significant sentence to both punish and deter him. Therefore, the Court should impose a sentence of 108 months' imprisonment – a sentence that is "sufficient but not greater than necessary" to meet the goals of sentencing. *See* 18 U.S.C. § 3553(a).

                                            Respectfully submitted,

                                            ERIN CREEGAN
                                            United States Attorney

Dated: September 18, 2025              /s/ Heather A. Cherniske
                                            Heather A. Cherniske
                                            Assistant United States Attorney
                                            NH Bar #19837
                                            Heather.cherniske@usdoj.gov